Franklin A. LATHROP

v.

HENKELS & McCOY, INC.
Civ. A. No. 70–1642.

United States District Court,
E. D. Pennsylvania.

Dec. 8, 1972.

Edward Wolf, Philadelphia, Pa., for plaintiff.

John G. Jenemann, Philadelphia, Pa., for defendant.

OPINION AND ORDER

MASTERSON, District Judge.

This matter is before us on defendant's Motion for Judgment Notwithstanding the Verdict or, in the alternative, for a new trial. The plaintiff in this diversity action was injured when the automobile he was driving struck a barricade and a pile of pipe on West Chester Pike. The defendant was laying the pipe for the Philadelphia Electric Company in the medial strip of the highway.

According to plaintiff's testimony, he was proceeding west at approximately 35 miles per hour on West Chester Pike

in the right hand lane[1] when he passed a sign warning him that construction was in progress. He observed barricades protruding onto the left lane, to prevent traffic from proceeding in that lane and from traveling too closely to a ditch being dug in the medial strip of the highway. Plaintiff also observed piles of pipe on the right shoulder of the road.

When plaintiff reached the "T" intersection with Tuxedo Road, he testified that he saw no barricades in the left lane. From the intersection with Tuxedo Road, West Chester Pike becomes an upgrade and crests approximately 150 feet from the intersection. As he proceeded up the hill in the right hand lane, plaintiff testified that he saw no evidence of construction on either side of the road nor were there any signs warning him of construction beyond the crest of the hill. Plaintiff said that the upgrade restricted his view of the road ahead to the crest of the highway. Believing that he had passed the construction area, plaintiff accelerated to 40 or 45 miles per hour.

When plaintiff reached the crest of the hill, he was momentarily blinded by the sun. Upon pulling down the sun visor to block out the light, plaintiff observed a barricade located in the lane in which he was driving, the right hand lane. Due to his momentary blindness, plaintiff did not see the barricade until it was only 35 to 40 feet away. Plaintiff estimated that the barricade was 50 to 60 feet west of the crest of the hill. Plaintiff also noticed a pile of pipe on the right which protruded approximately ten to twelve inches onto the right hand lane. To the left plaintiff saw a ditch being constructed in the medial strip. Plaintiff testified that he was traveling too fast to halt his vehicle within the short distance to the barricade. He was afraid to steer to the left of the barricade because he thought that the car might spin out.

Confronted with a classical Hobson's choice, plaintiff did not brake his automobile, but elected to drive between the barricade and the pipe. Unfortunately, he hit the barricade, spun to the right and came to rest on top of the pile of pipe.

The defendant made timely motions at trial for a directed verdict which we denied. The jury found for the plaintiff in the amount of $60,000 plus medical expenses. The defendant now argues that he should be granted Judgment Notwithstanding the Verdict because plaintiff's evidence shows that Lathrop was contributorily negligent as a matter of law. He also argues that he is entitled to a new trial because the charge to the jury on the assured clear distance rule was erroneous, the charge concerning plaintiff's right to recover for loss of earning capacity was erroneous, the plaintiff failed to prove loss of earning capacity by competent evidence, the verdict was excessive, and the defendant was prejudiced by the court's ruling on certain matters of evidence. We will deny the motions.

## OPINION

Defendant contends that the evidence presented in this case clearly shows the plaintiff to be contributorily negligent as a matter of law, and consequently, he must be denied recovery of damages despite a contrary jury determination. In support of his contention, defendant argues that plaintiff was operating his vehicle at a speed which did not conform to the conditions present on the highway and was therefore in violation of the assured clear distance rule[2]

1. West Chester Pike is a four-lane road with two lanes for eastbound traffic, a median strip and two lanes for westbound traffic.

2. Vehicle Code of 1929, P.L. 905, Sec. 1002, 75 P.S. § 1002. The rule reads in part:

(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic surface, and width of the highway, and of any other restrictions or con-

at the time of the accident. The rule states that no person shall operate any vehicle in such a manner that he cannot stop the vehicle within the distance he can clearly see. The Pennsylvania courts have consistently held that failure to observe this rule of the road is contributory negligence as a matter of law. See Metro v. Long Transportation Co., 387 Pa. 354, 127 A.2d 716 (1956); Smith v. Petaccio, 384 Pa. 74, 119 A.2d 797 (1956); Notarianni v. Ross, 384 Pa. 63, 119 A.2d 792 (1956); Rich v. Petersen Truck Lines, Inc., 357 Pa. 318, 53 A.2d 725 (1947); Hollern v. Verhovsek, 220 Pa.Super. 343, 287 A.2d 145 (1971). "[T]he statute has been applied in many cases as requiring judgment n.o.v. against operators of vehicles who have driven into obstructions on the highway, regardless of the negligence of the person who created the hazard." 357 Pa. at 321, 53 A.2d at 727.

The testimony, when viewed in a light most favorable to the verdict winner, shows that the plaintiff was not contributorily negligent as a matter of law. Plaintiff's testimony showed that he increased his speed on the upgrade to approximately 40 miles per hour after he had passed what he thought was the end of the construction zone. It was not unreasonable for him to believe this because, as he testified, there was no evidence of further construction on either side of the road nor were there any signs warning him of a lane change west of the hill crest.

Defendant maintains, however, that because the crest blocked plaintiff's vision of what lay on the other side of the hill, he should have reduced his speed accordingly. Failure to do so constituted a violation of the assured clear distance rule. Hogg v. Bessemer & Lake Erie R. Co., 373 Pa. 632, 96 A.2d 879 (1954). Defendant further maintains that plaintiff's momentary blindness, caused by the sun, is of no consequence. Due to the speed at which he was driving, the accident would have occurred anyway.

We do not agree with defendant's contentions. Defendant cannot expect to escape liability by hiding behind the protective barrier of the assured clear distance rule. Not only does public policy militate against the interjection of such a defense in this particular case, but the facts constitute a judicially recognized exception to application of the rule.

Defendant created a condition upon the roadway which was a trap for all but the most extraordinarily prudent motorist. All along the construction zone east of Tuxedo Road only the left hand lane was blocked to westbound traffic. Only the right hand lane remained open to traffic throughout the construction area. At the "T" intersection with Tuxedo Road all construction ceased and both lanes became open to westbound traffic. It is arguable whether or not the reasonably vigilant motorist would have concluded that no further construction would be encountered. It is certain, however, that even the most cautious motorist could not have avoided falling into the trap set by defendant. Without warning, the only lane that had previously been open to traffic was closed. A barricade was placed at a location where no reasonably prudent motorist would expect it. Lathrop was not required by any rule of law to anticipate that defendant would block the right hand lane.

■ Defendant may not set a trap upon the highway and then excuse his conduct because a reasonably vigilant driver fails to exercise an unusual degree of care to avoid falling into it. The assured clear distance rule does not require such an extraordinary degree of caution.

Moreover, we find no merit in defendant's contention that momentary blind-

---

ditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any

person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead.

ness is of no consequence here. Mr. Justice Musmanno held in Gillespie v. Bentz, 401 Pa. 588, 166 A.2d 25 (1960) that the assured clear distance rule has no application to a case in which the operator of a vehicle is suddenly blinded by a ray of light at a crucial moment before the accident.[3] Plaintiff testified in the instant case that he was blinded by the sun at the critical moment he reached the crest of the hill. By the time he had recovered his vision, plaintiff had lost the necessary time and distance between him and the obstruction so as to be able to avoid hitting it. Plaintiff's momentary blindness constitutes a judicially recognized exception to the rule. See Williams v. Flemington Transp. Co., 417 Pa. 26, 207 A.2d 762 (1965); Maranca v. Philadelphia, 394 Pa. 531, 147 A.2d 413 (1959); Perkon v. Marnella, 392 Pa. 319, 140 A.2d 799 (1958).

Because Lathrop was not contributorily negligent as a matter of law, defendant's Motion for Judgment N.O.V. must be denied.

Defendant also argues that he is entitled to a new trial because our charge to the jury on the assured clear distance rule was erroneous. We disagree. Our charge informed the jury that there are instances where literal compliance with the rule is impossible and that the jury must use their common sense in evaluating all the evidence with respect to the accident in arriving at a fair and just result. Defendant maintains that such an instruction invited the jury to make up their own mind as to whether violation of the rule is negligence.

■■ The assured clear distance rule requires the motorist to be able to stop his vehicle within the distance he can clearly see, and as weather or road conditions change, the driver must adjust his speed accordingly. Obviously, such adjustments in speed can only be made when the motorist is able to perceive the obstruction or other changes in driving conditions. The rule does not require the driver to be extraordinarily vigilant or to exercise superhuman sensory perception. There are instances where the reasonably cautious motorist will be unable to perceive certain conditions on the road until they are too close to avoid them. A sudden dip in the road and momentary blindness are examples. An elaborate trap, such as the one encountered by Lathrop, is another example. Our charge to the jury merely noted that there are exceptions to the rule and that the jury must examine all the facts to determine whether or not an exception exists here.

There was ample evidence for the jury to conclude that plaintiff should be excused from operation of the rule. Not only was an elaborate trap set, but plaintiff was momentarily blinded as well.

■■ We find no merit in defendant's contention that our charge to the jury concerning plaintiff's right to recover for loss of earning capacity was erroneous. Pennsylvania law is well settled with respect to the recovery of wages paid to a plaintiff while he is not working. Where the plaintiff is disabled and prevented from performing his work and the plaintiff's employer continues to pay his wages as a gratuity or gift, the plaintiff may still recover these wages as an item of damages. Kite v. Jones, 389 Pa. 339, 132 A.2d 683 (1957); Stevenson v. Pennsylvania Sports and Enterprises, Inc., 372 Pa. 157, 93 A.2d 236 (1952). Whether or not plaintiff was paid gratuitously is a question of fact for the jury to determine. There was ample evidence that during the period in question, plaintiff performed no services for his employer and was unable, due to

---

3. The plaintiff in *Gillespie* and his wife were driving at approximately 45 miles per hour on a steep curved grade when he was momentarily blinded by sunlight. In the short time it took for him to pull down the sun visor, his car came within 30 feet of a halted truck which was blocking his lane. Unable to stop, plaintiff swerved to avoid hitting the truck, but struck it anyway.

the injuries he sustained in the accident, to carry out his responsibilities as a salesman for his company. The jury could conclude, therefore, that plaintiff's employer paid him gratuitously. See Mr. Justice Musmanno's dissenting opinion in Kite v. Jones, 389 Pa. at 353, 132 A.2d 683.

Defendant's contention that plaintiff failed to prove loss of earning capacity by competent evidence ignores ample facts in the record substantiating Lathrop's inability to work. There was sufficient evidence for the jury to find that during the three and one-half month period in question, plaintiff did not and could not work. There was testimony that plaintiff was hospitalized for approximately two weeks and that an operation called an arthrotomy was performed upon plaintiff. Following his hospitalization, plaintiff was confined to bed for 45 days.

In our charge we limited and designated the period during which loss of earning capacity could be found. We stated that during the period plaintiff had a total loss of earning capacity he was entitled to that portion of his yearly salary of $12,000, approximately three and one-half months worth.

■ Defendant maintains that the verdict of $60,000 was excessive. In view of plaintiff's severe injuries, resulting disability and continuing pain and suffering, the jury's award was not "so grossly excessive as to shock the conscience of the court." Jones v. Atlantic Refining Co., 55 F.Supp. 17, 20 (E.D.Pa.1944).

■ Defendant also contends that the court erred with respect to certain rulings on matters of evidence. He maintains that he was prejudiced when plaintiff was permitted to testify as to what his objectives were as a sales manager. Defendant claims that the testimony was speculative and placed in the jury's mind a substantial figure for which there was no basis. Whatever the merit of this contention, our charge to the jury cured any possible error. We informed the jury that we could recall no concrete evidence of loss of specific commissions, instructed them that plaintiff has the burden of proof on damages and that failure to carry that burden should result in resolution of that issue against the plaintiff.

■ Nor did we err in denying defendant the opportunity to introduce photographs of the accident scene as part of the examination of its foreman, Michael Cash. Defendant was unable to substantiate the background of these photographs. All the photos were taken at a time well after the work on the highway had been completed and therefore did not accurately depict the scene of the accident. Moreover, the photos had writings and drawings upon them purportedly indicating the presence of obstacles. There was no offer of proof that Mr. Cash could identify or substantiate either the photographs or the drawings upon them.